United States District Court
Southern District of Texas

**ENTERED**

April 19, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

GRACIE CATES,                          §
                                       §
                Plaintiff,             §
                                       §
v.                                     §        CIVIL ACTION NO. H-22-118
                                       §
CITY OF WALLER, ET AL.,                §
                                       §
                Defendants.            §

**MEMORANDUM & OPINION**

Seth Samsel was convicted in Waller County, Texas, for sexually assaulting Gracie Cates in 2017, when she was 16 years old.[1]  Samsel was 19 at the time.  He received no jail time, but he has to register as a sex offender.  Cates, who is now 20 years old, has sued Samsel; his father, Matthew Samsel, a City of Houston police officer; the City of Waller; Waller County; and the detectives who investigated Cates's sexual assault allegations against Samsel.  Cates alleges that the defendants "conspired to obstruct the investigation [of Seth Samsel]," to "assure that [he] would not be prosecuted or convicted of the rape of the Plaintiff or that a meaningful investigation would be conducted," because Samsel was the son of a Houston police officer.  (Docket Entry No. 20, at 4–5).  Despite this alleged obstruction, Samsel was prosecuted and convicted, and he is meeting his registration obligations.

The City of Waller and Waller County have moved for judgment on the pleadings on Cates's federal claims under 42 U.S.C. §§ 1983 and 1985.  (Docket Entry No. 24).  Based on the motion, the response, and the applicable case law, the motion for judgment on the pleadings is granted.  Cates's claims under §§ 1983 and 1985 are dismissed with prejudice.  Because the federal

---

[1] Although Cates originally sued in this litigation as Jane Doe, she has since chosen to proceed using her identity.

claims provided the only basis for federal jurisdiction, Cates's remaining state-law claims are dismissed, without prejudice.

## I.      Background

Cates's sexual assault allegations were investigated by two Waller County detectives, Nanci Anderson and Bryan Dasher.  (Docket Entry No. 20, at 6).  Cates alleges that Anderson and Dasher "conspired to obstruct justice by failing to conduct any meaningful investigation" into the sexual assault allegations, "in an effort to prevent [Matthew Samsel's] 19-yr-old son from being prosecuted."  (*Id.*, at 4).  Specifically, Cates alleges that:

- Anderson "fail[ed] to allow [Cates] and her mother to make statements to officers that would assist the investigation";

- Anderson and Dasher "failed to collect any physical evidence from the victim," including a "green towel associated with the criminal case," even though Cates and her mother had "saved the towel and made multiple attempts to get the towel to Anderson";

- Anderson and Dasher "concealed and destroyed evidence," by destroying Seth Samsel's recorded interview, and by "fail[ing] to record interviews with witnesses";

- Anderson did not contact Cates after her initial report and interview until "the day before Anderson was scheduled to testify at Seth Samsel's criminal trial, two years later";

- Anderson "ignored [Cates] and the investigation" because "she did not approve of [Cates's] boyfriend, her boyfriend's behavior, of [Cates] being around the boyfriend's parent's home";

- Anderson did not "contact[] the DPS lab about the collection of evidence" until "days before the trial . . . after it was too late";

- Anderson repeatedly ignored phone calls from Cates's mother;

- Anderson "refused to collect DNA that would have been present on [Cates's] bedding";

- Anderson and Dasher "shared critical information with the Samsels about the investigation that suspects should not be privileged to"; and,

- Anderson, Dasher, and other officers "allowed and encouraged . . . Matthew Samsel to illegally participate in the investigation and the grand jury proceedings."

2

(*Id.*, at 3–7).

Despite this alleged interference, Seth Samsel was prosecuted, and successfully.  A jury convicted him of the sexual assault charged.  Cates alleges that during the trial, the prosecutors "put Anderson on the stand [at trial], as essentially an adverse witness, [to] have her explain why she botched the investigation and her failures and why the evidence was not collected, destroyed, or missing."  (*Id.*, at 9).  Anderson's response was that she did not believe Cates to be credible. (*Id.*).

Cates alleges that the actions by Anderson and Dasher to obstruct the investigation have "disturbed" her ability to bring civil claims against Samsel because "the same evidence that was not collected, tested, and or [sic] destroyed by defendants to support the criminal charges is the same evidence [Cates] could use to support her civil claims."  (*Id.*, at 10).  Cates also appears to suggest that Samsel did not receive a prison sentence because of the lack of "evidence that was never collected or investigated to use against him."  (*Id.*, at 5).

Cates also alleges that the "City of Waller failed to properly supervise, train, or discipline Anderson [and Dasher]."  (*Id.*, at 11).  Anderson was "later terminated due to her failure to properly investigate crimes," and Dasher "is currently on bond after being indicted for a third-degree felony alleging [that] he misused official information for personal reasons."  (*Id.*, at 5, 11).

The City and County have moved for judgment on the pleadings, alleging that Cates has failed to state a claim for relief under 42 U.S.C. § 1983 or § 1985 because she has not pleaded facts showing a policy or practice "by City or County officers in covering up crimes or performing deficient investigations to protect a suspect" and has not alleged any "constitutional violation by a city or county actor."  (Docket Entry No. 24).  The City and County also assert that the court lacks

3

subject-matter jurisdiction because "Cates has no standing to complain of how her criminal complaint was investigated and prosecuted." (*Id.*, at 15).

The motion to dismiss and the parties' arguments are addressed below.

## II.     The Legal Standards

### A.        Rule 12(b)(1)

Rule 12(b)(1) governs challenges to a federal court's subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs*), 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted).  The plaintiff has the burden to establish subject matter jurisdiction. "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).

A court lacks power to decide a claim when a plaintiff lacks standing to bring the claim. Standing requires: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  As "the party invoking federal jurisdiction," the plaintiffs "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 561.  They must meet this burden "with the manner and degree of evidence required at the successive stages of the litigation," which means that "on a motion to

dismiss, plaintiffs must allege facts that give rise to a plausible claim of . . . standing." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (2009).

### B.   Rule 12(c)

"A motion brought pursuant to Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  The Rule 12(c) and Rule 12(b)(6) standards are the same.  *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.   Analysis

Cates's allegations are far from clear.  Cates alleges in her complaint, as a single cause of action, a "civil conspiracy to obstruct justice, intentional infliction of emotional distress, First Amendment violation, Equal Protection, and Violation of Substantive and Procedural Due Process under the Fourteenth Amendment, under 42 U.S.C. [§] 1985 [and] 42 U.S.C. [§] 1983."  The City and County have moved to dismiss Cates's federal claims based on what she "appears to allege."

(Docket Entry No. 24, at 11).  Cates's response does not sufficiently clarify the allegations.  Cates, who is represented by counsel, describes her claims in at least three different ways.  First, Cates writes:

> In addition to the Civil conspiracy claims to obstruct [j]ustice[,] plaintiff brings claims for equal protection under the 14th amendment.  Defendants[] Waller County, The City of Waller, William Llewellyn, and Elton Mathis, failed to supervise officers Nanci Anderson . . . and Brian Dasher . . . after they were assigned to investigate the rape of Ms. Cates. . . .  Plaintiff's rights were violated as a result of the municipalities' failure to supervise Anderson and Dasher, as they conspired with HPD officer Mathew [sic] Samsel to thwart the criminal prosecution against Samsel's son Seth Samsel . . . .  The failure to supervise and train by the municipalities was the moving force behind Plaintiff's constitutional rights being violated.  Further, Plaintiff's First Amendment right to petition and speech was violated.

(Docket Entry No. 35, at 3)

Cates also writes:

> Plaintiff brings claims against the municipalities that are independent and separate claims for a Violation of Due Process under the Fourteenth Amendment for Equal Protection and Conspricary [sic] to Obstruct justice, and First Amendment claims based on its failure to supervise, train, discipline, or failure to implement policies to discourage constitutional violations.

(*Id.*, at 12).

Finally, Cates writes that the amended complaint "specific[ally]" alleges that:

> The City of Waller and Waller County's officers engaged in a <u>Civil Conspiracy to Obstruct Justice in violation of 42 USC 1985.</u>  The conspiracy was possible due to the City of Waller's policymakers, chief of police, and mayor, and Waller County Sheriff's failures to properly supervise, train, or discipline their officers, Defendants Anderson or Dasher. . . .  These failures allowed the conspiracy to Obstruct Justice . . . .  These actions and inactions resulted in Plaintiff's

constitutional rights under the First Amendment, Due process, and Equal Protection
Clauses under the Fourteenth Amendment being violated.

(*Id.*, at 4 (emphasis in original)).

Cates's complaint appears to assert § 1983 claims for violations of her First and Fourteenth
Amendment rights and a conspiracy claim under § 1985.  These claims fail on several grounds.

### A.    Municipal Liability Under § 1983 and § 1985

Municipalities and supervisory officials are not liable for the conduct of their employees
on the basis of respondeat superior.  *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990).
Municipal liability under §§ 1983 and 1985 "requires proof of three elements: a policy maker; an
official policy; and a violation of constitutional rights whose 'moving force' is the policy or
custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't
of Social Servs.*, 436 U.S. 658, 694 (1978)).  "Plaintiffs who seek to impose liability on local
governments under § 1983 [or § 1985] must prove that 'action pursuant to official municipal
policy' caused their injury."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436
U.S. at 691).  "Official municipal policy includes the decisions of a government's lawmakers, the
acts of its policymaking officials, and practices so persistent and widespread as to practically have
the force of law."  *Id.* at 61.

Cates alleges that the City and County have failed to properly supervise, train, or discipline
their officers, resulting in the violations of Cates's First and Fourteenth Amendment rights.  Cates
does not allege that the City and County have an official policy of failing to properly supervise,
train, or discipline their officers.  Nor does she allege facts that could show a pattern of conduct
amounting to a customary policy. "A customary policy consists of actions that have occurred for
so long and with such frequency that the course of conduct demonstrates the governing body's
knowledge and acceptance of the disputed conduct."  *Jackson v. Valdez*, 852 F. App'x 129, 135

(5th Cir. 2021). "To plausibly plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to [her] injury." *Id.* (quoting *Peña v City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018)).

Cates's complaint alleges that the City and County failed to properly supervise, train, or discipline Officers Anderson and Dasher for their conduct in investigating her sexual assault allegations. These allegations are insufficient to plausibly show a "persistent and widespread" practice by City or County officials of failing to supervise, train, or discipline officers. Nor does Cates allege a pattern of conduct by city officials in investigating sexual assault allegations. Instead, Cates's allegations are centered around a specific incident—the investigation of her sexual assault allegations. That is insufficient to support a claim for municipal liability.

Even if Cates had plausibly alleged the existence of a policy or custom, "[m]unicipal liability for conspiracy under § 1985 requires a showing of 'class-based, invidiously discriminatory animus behind the conspirator's actions.'" *Aly v. City of Lake Jackson*, 605 F. App'x 260, 263 (5th Cir. 2015); *Moffett v. Bryant*, 751 F.3d 323, 326 (5th Cir. 2014) ("[A] violation under § 1985 requires 'class-based, invidiously discriminatory animus behind the conspirator's action.'" (citation omitted)). Cates has not alleged facts that might plausibly support a showing of class-based, invidiously discriminatory animus behind the actions of the county detectives. "At best," Cates "has alleged the existence of individual bias"—that Anderson was biased because "she did not approve of [Cates's] boyfriend, her boyfriend's behavior, or [Cates] being around the boyfriend's parent's home," and because she did not find Cates credible—"a far cry from class-based discriminatory animus." *Moffett*, 751 F.3d at 326.

Cates has also not pleaded the existence of a constitutional injury from a city or county official, as needed to succeed on her § 1983 claim. *See City of Los Angeles v. Heller*, 475 U.S.

796, 799 (1986). A generous interpretation of Cates's complaint might raise potential constitutional violations under the First Amendment, the Fourteenth Amendment Equal Protection Clause, and the Fourteenth Amendment Due Process Clause. But Cates has failed to assert a plausible constitutional violation under any of these theories.

        i.     First Amendment

Cates appears to assert two potential First Amendment claims. First, she alleges that "[t]he defendants' officers" violated her First Amendment "right to speech by refusing to allow [her] or her mother to provide an interview statement or provide critical evidence." (Docket Entry No. 35, at 12; *see also* Docket Entry No. 20, at 10). Second, she alleges that Anderson and Dasher "destr[oyed] and fail[ed] to collect evidence," which "disturbed" her ability to bring civil claims against Seth Samsel. (Docket Entry No. 20, at 10). The City and County have interpreted this second allegation as a claim for denial of Cates's right to judicial access.

Cates has not pointed to case law supporting a First Amendment right to provide an interview statement or evidence in a criminal investigation. Prosecutors cannot force witnesses to talk to them absent a court order. *See Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 422 (E.D. La. 2019). This compelled speech might violate the First Amendment. *Id.* But there is no First Amendment right that requires a prosecutor or detective to allow witnesses to speak or provide evidence. Indeed, such a right would run into the "legal obstacle" that "a citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution." *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021).

Nor has Cates plausibly alleged that she was denied the right to judicial access. "Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time,' and

backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002)).  Cates has alleged that because Anderson and Dasher destroyed and concealed evidence related to her sexual assault, she is hampered in bringing civil claims against Seth Samsel.

The fact that Cates has alleged civil causes of action against Samsel in this very complaint undermines her allegations that she has been denied a right to judicial access.  Although Cates has alleged that the detectives failed to collect all evidence available to them that might have more easily established Samsel's guilt, a jury did convict Samsel of two counts of sexual assault.  The evidence was sufficient to show guilt beyond a reasonable doubt.  There is no basis to speculate that Cates's civil claims against Samsel are compromised.  *Id.* at 602 ("Unless and until the plaintiffs' claim . . . suffers some concrete setback traceable to the defendants' alleged [conduct], their allegation that the defendants impaired their effort to bring that claim is no more than speculation about an event that may or may not come to pass.").  Cates's denial-of-access claim similarly fails.

    ii.    Equal Protection

Cates alleges that "[w]hen state officers conspire in such a way as to defeat or prejudice a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law."  (Docket Entry No. 20, at 10).  This allegation appears to recast Cates's First Amendment denial-of-judicial access claim as an equal-protection claim.  Cates has pleaded neither a plausible denial-of-access nor a denial of equal-protection claim.  Cates has not alleged that "she has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 582 U.S. 562, 564 (2000).

If Cates has also alleged that the county detectives discriminated against her by attempting to interfere with an investigation into Seth Samsel's misconduct, that equal protection claim would fail on standing grounds. Cates does not "have a legally cognizable interest in whether," or how, Samsel was investigated. *James v. Willis*, No. 21-501, 2022 WL 481812, at *2 (2d Cir. Feb. 17, 2022); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Cates's equal protection claim—however it is interpreted—fails.

### iii.    Due Process

Finally, Cates alleges that "the City of Waller's policymakers, chief of police, and mayor, and Waller County Sheriff's failures to implement policies to prevent officers from obstructing justice and denying citizen's due process based on the failure to investigate, the destruction of evidence, and allowing third parties to engage in the investigation process were the moving force behind the constitutional violation of Plaintiff [sic] due process rights, under the Fourteenth Amendment." (Docket Entry No. 20, at 11).

Other than a conclusory allegation that her due process rights were violated, Cates has not pleaded or pointed to facts that might show how her due process rights were impacted by the way Seth Samsel was investigated. Cates has not cited to case law or other sources supporting the proposition that a crime victim has a protected due process interest in how her accused is investigated. Nor does Cates have standing to assert this claim as, again, "longstanding Supreme Court precedent confirms that a crime victim lacks standing to sue" a county detective "for failing to investigate . . . her perpetrator . . . ." *Lefebure*, 15 F.4th at 654. If a crime victim lacks standing

11

to sue based on a prosecutor's failure to investigate the alleged crime and alleged criminal, then she must similarly lack standing to sue based on how the investigation is conducted. Cates's due process claim lacks merit.

### B.      The State-Law Claims

Cates also asserts a state-law assault claim against Seth Samsel and a claim for civil conspiracy to conceal assault against Matthew Samsel and Seth Samsel. (Docket Entry No. 20, at 11–13). It is possible that Cates also asserts an intentional infliction of emotion distress claim against Seth Samsel, but the complaint is unclear. Cates filed her complaint in this court based on federal-question jurisdiction under 28 U.S.C. § 1331. Federal courts may decide claims arising from violations of federal law and accompanying state-law claims over which the court may exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). But because the defendants are entitled to judgment on the pleadings on Cates's only federal claims, no federal question remains before this court. This court declines to exercise supplemental jurisdiction over Cates's remaining state-law claims.

## IV.    Conclusion

The City and County's motion to dismiss Cates's amended § 1983 and § 1985 claims, (Docket Entry No. 24), is granted. Because Cates has already had an opportunity to amend, and because further amendment would be futile, Cates's federal claims are dismissed with prejudice. The remaining state court claims are dismissed without prejudice. Cates may refile those claims in state court.

SIGNED on April 19, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge